**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY


JOEL EDWARD DURMER,                  :
                                     :    Civil Action No. 05-62 (JAP)
            Petitioner,       :
                                     :
            v.                :    **OPINION**
                                     :
GRACE ROGERS, et al.,                :
                                     :
            Respondents.      :


**APPEARANCES:**

>    JOEL EDWARD DURMER, Petitioner <u>Pro</u> <u>Se</u>
>    # 299819/SBI# 1074
>    Adult Diagnostic & Treatment Center
>    8 Production Way
>    Avenel, New Jersey 07001
>
>    ROBERTA DIBIASE, ESQ.
>    Ocean County Prosecutor's Office
>    119 Hooper Avenue
>    Toms River, New Jersey 08753
>    Counsel for Respondents

**PISANO**, District Judge

    This matter is before the Court on Petitioner Joel Edward Durmer's petition for habeas corpus relief under 28 U.S.C. § 2254.  For reasons discussed below, the petition for habeas corpus relief will be denied for lack of merit.

I.   BACKGROUND

A.   Statement of Facts

The facts of this case were recounted below and this Court,
affording the state court's factual determinations the
appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply
reproduce the Appellate Division's factual recitation, as set
forth in its April 5, 2000 per curiam Opinion on petitioner's
direct appeal from his conviction:

> Tried to a jury, defendant was convicted of three counts of
> first-degree aggravated sexual assault (N.J.S.A. 2C:14-2a);
> one count of second-degree sexual assault (N.J.S.A. 2C:14-
> 2b); and one count of second-degree child endangerment.
> (N.J.S.A. 2C:24-4a).  At sentencing, the trial court merged
> the second-degree sexual assault conviction; it imposed
> three concurrent twenty-year terms with ten-year parole
> disqualifiers, for the first-degree convictions and
> sentenced defendant to a consecutive ten-year term, with a
> five-year parole disqualifier, for the endangerment
> conviction.  Defendant has appealed his convictions and his
> sentence; after carefully reviewing the entire record, we
> affirm.

> Defendant's victim was his nephew, C.B., who was born in New
> Jersey in December 1982.[1]  With his parents, together with
> his older brother and sister, he moved to Maine when he was
> approximately four years of age.  When his parents
> separated, C.B. returned to New Jersey with his father and
> his brother and the three lived with defendant and his
> family for a period of time.  Defendant's wife is the sister
> of C.B.'s father.  There was conflicting testimony at trial
> about the date when the B.'s returned to New Jersey.  The
> State offered testimony showing they returned in 1989;
> defendant's wife and other witnesses testified that the B.'s
> did not arrive until 1990.

---

[1]  C.B. was fifteen years old when he testified at
petitioner's trial in 1997.

2

The B.'s stayed with defendant's family for several months. They then moved to another home nearby and still later to another.  The two boys returned to Maine each summer for brief stays with their mother; C.B. returned to Maine permanently in 1994, when he was approximately twelve years old.  After he returned to Maine, he told people that defendant had sexually assaulted him.  He was examined by a physician, who testified that the results of his examination disclosed abnormalities in C.B.'s anorectal area that were consistent with repeated penetration.

At trial, C.B. testified that defendant sexually assaulted him "hundreds" of times during the years he lived in New Jersey.  He said the assaults were oral and digital and included anal intercourse.  According to the chronology provided by C.B., he would have been approximately six years of age when the assaults commenced.

(R4, Opinion, Superior Court of New Jersey, Appellate Division,

dated April 5, 2000).[2]

---

[2]   Respondents submitted the relevant portions of the state court record with their answer to the petition, which are identified as follows:

R1 - Petitioner's brief and appendix on direct appeal
R2 - Petitioner's supplemental pro se brief on direct appeal
R3 - Confidential material sent separately by the State to the Superior Court of New Jersey, Appellate Division
R4 - Opinion, Superior Court of New Jersey, Appellate Division, dated April 5, 2000
R5 - Order denying certification, Supreme Court of New Jersey, dated March 8, 2001
R6 - Order denying certiorari, Supreme Court of the United States, dated October 1, 2001
R7 - Petition for post-conviction relief ("PCR")
R8 - Petitioner's brief in support of PCR petition
R9 - State's responding brief
R10 - Order denying PCR petition, Superior Court of New Jersey, Law Division, filed September 19, 2002
R11 - Petitioner's brief and appendix on appeal from PCR denial
R12 - State's responding brief
R13 - Opinion, Superior Court of New Jersey, Appellate Division, dated February 26, 2004
R14 - Petition for certification dated March 3, 2004

B.  <u>Procedural History</u>

Petitioner, Joel Edward Durmer ("Durmer"), was indicted by an Ocean County Grand Jury in 1995 on three counts of first-degree aggravated sexual assault, one count of second-degree sexual assault, and one count of child endangerment.  Trial commenced on July 29, 1997, but a mistrial was granted on July 30, 1997.  The matter was re-tried on December 9, 1997 and concluded December 16, 1997 with a jury verdict of guilty on all counts.  Durmer was sentenced on March 27, 1998 to an aggregated term of 30 years in prison with a 15-year parole disqualifier.

Durmer filed a direct appeal from his conviction and sentence to the New Jersey Appellate Division, and both the conviction and sentence were affirmed in an Opinion filed on April 5, 2000.  The New Jersey Supreme Court denied certification on March 8, 2001.  <u>State v. Durmer</u>, 167 N.J. 633 (2001).  The United States Supreme Court denied Durmer's petition for a writ of certiorari on October 1, 2001.  <u>Durmer v. New Jersey</u>, 534 U.S. 858 (2001).

Thereafter, on or about July 1, 2001, Durmer filed a petition for post-conviction relief ("PCR") in state court.  The

---

R15 - State's response to petition for certification
R16 - Order denying certification, Supreme Court of New
        Jersey, filed May 6, 2004
R17 - Trial transcript, December 16, 1997
R18 - Transcript of state PCR proceeding, September 13, 2002

Honorable James N. Citta, J.S.C. denied the PCR petition by Order filed on September 19, 2002.[3]  Durmer appealed from that decision, and the New Jersey Appellate Division affirmed in an Opinion filed on February 26, 2004.  The New Jersey Supreme Court denied certification on May 6, 2004.  State v. Durmer, 180 N.J. 355 (2004).

Durmer submitted his federal habeas petition under 28 U.S.C. § 2254 on December 14, 2004.[4]  Respondents answered the petition on February 17, 2006.  Durmer filed a rebuttal brief on March 15, 2006.[5]

---

[3]  A hearing was conducted on September 13, 2002.

[4]  Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1998) (applying prison mailbox rule set forth in Houston, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition).  Although the Court is unable to determine from the face of the petition the exact date that Durmer handed his petition to prison officials for mailing, Durmer signed the petition on December 14, 2004.  See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1998) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition).  Accordingly, the Court finds that December 14, 2004, rather than January 6, 2005 (the date the petition was received in the Clerk's office), was the date this petition was filed for purposes of calculating the timeliness of the petition.

[5]  Petitioner has filed several motions and has attempted to supplement his petition in this matter in reply to the State's answer.  In particular, Durmer filed a motion for appointment of counsel, which this Court denied by Opinion and Order dated November 7, 2005.  (Docket Entry Nos. 10, 12, & 13).  On January 17, 2006, Durmer submitted supplemental documentation.  (Docket

On July 18, 2006, this Court issued an Opinion and Order dismissing the habeas petition as time-barred under 28 U.S.C. § 2244(d).  Durmer filed a motion for reconsideration on August 15, 2006, and a supplemental response on September 11, 2006.  In particular, Durmer submitted documentary proof that he had filed his first state PCR petition on July 1, 2001, rather than July 1, 2002, as noted in the state court record provided.[6]  Thus, by Opinion and Order, filed September 26, 2006, this Court granted Durmer's motion, finding that his petition was timely filed, and promptly re-opened the matter for review on the merits.

## II.  STATEMENT OF CLAIMS

In his habeas petition, Durmer raises several claims of ineffective assistance of trial counsel, prosecutorial misconduct, judicial bias, and official misconduct.  He also claims actual innocence and contends that, by the actions of his trial counsel, the trial judge, and the prosecutor, Durmer was

---

Entry No. 19).  He also filed a motion to retrieve a brief he filed in state court.  (Docket Entry No. 20).  On February 7, 2006, Durmer moved to have default entered against the State. (Docket Entry No. 21).  On March 15, 2006, Durmer filed a rebuttal brief to the State's answer, which expanded on the claims raised in the petition.  (Docket Entry No. 24).  Finally, on July 6, 2006, the Court received Durmer's request for discovery and document inspection.  (Docket Entry No. 27). Because this Court has determined that Durmer's § 2254 habeas petition is without merit, all of his motions and other applications are denied as moot.

[6]  The July 2002 date pertains to the state PCR brief filed by Durmer's appointed counsel on his behalf.

not permitted to present hearsay evidence at trial regarding third party liability, namely, that the victim's father was the perpetrator of the crimes for which petitioner was convicted.[7]

The State answered the petition asserting several affirmative defenses.  First, the State contends that the action is time-barred.  As mentioned above, this Court recently rejected this affirmative defense on Durmer's motion for reconsideration. Second, the State asserts that Durmer does not demonstrate a violation of federal constitutional dimension, and fails to raise federal issues cognizable in a § 2254 proceeding.  The State also contends that petitioner's claims, in particular, the ineffective assistance of counsel claims, are without substantive merit.

### III.   STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Because petitioner is a pro se litigant, the

---

[7]  All of the claims asserted by petitioner appear to have been raised and fully presented on state court review.

Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable

application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id</u>.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." <u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v.</u> <u>Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it

9

resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such de novo review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-

AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

## V.  ANALYSIS

The Court will examine each of petitioner's claims on the merits, pursuant to the standard of review as recited above.

### A.  Ineffective Assistance of Counsel

Durmer first asserts claims that his trial counsel was ineffective at trial in violation of his Sixth Amendment right. In particular, Durmer alleges that trial counsel (1) failed to lay a proper foundation for the admission of the victim's guardian ad litem's report, which allegedly stated that the

11

victim's father, not petitioner, sexually abused the child; (2)
failed to subpoena documents from the States of Maine and New
Jersey which would have established an alibi for petitioner and
shown that the victim had lied; (3) failed to disclose to
petitioner certain documents that would have been crucial in
establishing the defense that a third party had committed the
crimes for which petitioner was on trial; and (4) failed to use
these documents to effectively cross-examine the victim, his
mother, and the guardian ad litem.

These claims of ineffective assistance of counsel were
raised by Durmer in his state PCR proceedings.  The PCR court
denied Durmer's application in a hearing held on September 13,
2002.  The court noted:

> There is evidence in the court's file that have been
> reviewed by the court at every level that indicates
> specifically that this victim did not disclose to his
> guardian ad litem or any other party involved in this case
> or this child's case at any level that his natural father,
> in any location, New Jersey or Maine, sexually abused him.
> And each and every statement by this victim to every person
> that he disclosed this information to from its inception and
> its first closure, he continually pointed at this defendant.
> Never once did he waiver.  Never once did he say, well, in
> addition to that, he did the same thing to me that somebody
> else did or that my father did or any words to that effect.

(R18, PCR Transcript at 12:10-23).

The PCR Court examined Durmer's claims under the standard
set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and
<u>State v. Fritz</u>, 105 N.J. 42 (1987).  (R18, PCR Transcript at
13:11-15:4).  Specifically, the court addressed petitioner's main

12

claim that trial counsel failed to complete an investigation and present evidence that would have established the defense of third party guilt.  After carefully reviewing the record and the arguments advanced by petitioner and his counsel, the court found that there was no reliable evidence from the record to show the existence of the alleged third party guilt.  The PCR court held:

> Well, the fact of the matter is, an investigation was done. The fact of the matter is, it was determined that this evidence was A, not there.  It is phantom evidence.  And B, even if it were there, not admissible as a defense in the form set forth and presented before Judge Giovine.
>
> Judge Giovine even went so far, after the selection of the jury in the first instance and part way through the trial, when it was suggested that somebody had said at some point in time that this victim said that his father assaulted him, he declared a mistrial and gave counsel additional time to produce substantive evidence to the effect, to have available to attack and impair and impeach the State's case at the subsequent trial.
>
> There was no fruit on that tree.  There was no substantive evidence.  To say now, because it wasn't there before and it didn't come forward to be helpful, that counsel was ineffective fails in the first prong.
>
> B, counsel committed numerous other errors which individually might not have prejudiced the petitioner's right but cumulatively deprived petitioner of effective assistance of counsel.
>
> He claims that Mr. Young committed various errors in investigating this case.  Now we have an overview or a catchall: Failed to investigate the case.  So if we can't get the specific allegation that he failed to investigate the case, he didn't, in general, investigate the case.  He didn't review the evidence.  He didn't obtain a psychological records properly.  Objecting during the trial, he didn't do properly.  Attempting to admit the Hawkins and Balducci report, he didn't do it effectively because he lost those arguments legally.

Again, those issues were addresses on appeal; the Appellate Division upheld the rulings of the trial court judge.  And there is nothing in the record to indicate that Mr. Young did not represent his client zealously and argue the law from the best perspective possible.

He presented various witnesses.  He presented Carol Durmer, defendant's wife Jennifer Durmer, Marie Bach, David Lapinsky, friends of the defendant.  The testimony of all of these witnesses contradicted some of the claims of sexual abuse made by CD.

There is no evidence in the report supporting a claim that Mr. Young proceeded differently or the result of the case would have been different had he proceeded differently.  I meant to say deficiently.  There is no evidence to show that he proceeded deficiently or that the result would have been different had he proceeded in a different matter.

Under State v. Fritz, giving due deference to trial strategy of defense counsel, under our law, to set aside now and call it ineffective counsel would be clearly what the post conviction relief applications are not about: Monday morning quarter backing, so to speak, and second guessing trial strategy of counsel.

Counsel failed to contest the accuracy of the State's investigation. ...

The petitioner claims that Mr. Young should have verified that the alleged victim was registered and attending schools in New Jersey at the time indicated, investigated the possibility that any sexual assaults were committed by the father, investigated the petitioner's alibi which was turned over to the State's investigator early in the trial.

Again, Mr. Young focused on the notion of an alibi at the trial when he called the defendant's friend David Lapinsky and when he submitted school records.  Mr. Young brought out the testimony of the natural father's physical abuse.  And it was clear that he followed a third-party [guilt defense] throughout the trial.  There was no evidence that this claim can meet the two-pronged test of the Strickland/Fritz cases.

...

Here, in reviewing this matter, there is not one scintilla of corroboration, certification, or other reason for this

Court to even stretch and say that a prima facie claim of
ineffective assistance of counsel has been made, requiring
this Court to set a plenary hearing to address that issue.

The defendant has been saying from the beginning, it wasn't
me.  It was his father that did these things to him.  It
wasn't me.  It was his father who did these things to him.

There is nothing in this record in this case, reviewed in
camera or otherwise, that would indicate in the slightest
that this defendant did not commit these crimes.  The
State's case and the evidence presented, in this Court's
view, is overwhelming.  Not once did this victim waiver from
his allegations.

The defense presented by Mr. Young provided this third-party
victim scenario as best, I suspect, as any evidence will
show at any subsequent hearing.  It has been investigated to
death.

I find as a fact that the defendant has not presented a
prima facie claim under the Strickland/Fritz standard, that
he should have a plenary hearing on this issue.

And I further find, for the reasons that I've stated, that
the representation by counsel and all of these issues raised
is not ineffective, has not met the threshold.  Certainly
was not so ineffective as to deny Mr. Durmer any counsel
whatsoever, which is the standard under Strickland and
Fritz.  And there certainly is no evidence in this record,
in the transcripts or in any of the reports reviewed by this
Court, in camera and otherwise, that would lead any
reasonable court or jury to conclude that the outcome would
be different.

(R18, PCR Transcript 16:4-21:22).

The Appellate Division affirmed the denial of post-

conviction relief in an Opinion filed February 26, 2004.  (R13).

The court noted that trial counsel had attempted to introduce

records from the State of Maine and the guardian ad litem's

report to show that the victim's father had committed the alleged

sexual abuse.  The trial court had excluded the evidence from

15

admission at trial.  The Appellate Division reiterated its ruling

on direct appeal, finding no error in excluding such evidence:

> During his testimony, C.B. was never asked if he had told
> the guardian ad litem that his father had sexually abused
> him.  The guardian ad litem testified, in a <u>N.J.R.E.</u> 104
> hearing, that C.B. never made that statement to her, and
> that she had no specific recollection of anything within the
> records of the Maine's Department of Human Services that
> would indicate a history of sexual abuse by C.B.'s father.
> C.B.'s mother testified that she did not discuss with the
> guardian ad litem the question whether C.B.'s father had
> sexually abused the boy.  She further testified that while
> certain incidents had made her wonder whether her former
> husband had sexually abused their daughter, she had no
> reason to think he had behaved similarly toward C.B.
>
> In that posture, we are satisfied that the trial court was
> completely correct in determining that there was an
> inadequate foundation laid to permit introduction of the
> guardian ad litem's report.

(R13, February 26, 2004 Appellate Division Opinion at pg. 3).

The court further applied the two-prong standard set forth in

<u>Strickland</u> and <u>Fritz</u>, and found that petitioner was unable to

satisfy the second prong that the allegedly deficient performance

materially affected the outcome of the trial.  In particular, the

court stated:

> Defendant argues here that his trial counsel was ineffective
> when he failed to establish the proper foundation for the
> admissibility of the evidence regarding the alleged abuse of
> the victim by the victim's father.  However, because the
> victim was not asked about these allegations, we do not know
> if his response would have provided the proper foundation
> for the introduction of this evidence.  In this PCR petition
> defendant did not produce any evidence to show that, if
> given the opportunity, he would be able to meet this burden
> of proof.  Absent such proof, defendant cannot satisfy the
> second prong of the <u>Strickland/Fritz</u> test.

> The balance of defendant's argument lacks sufficient merit
> to warrant discussion in a written opinion.  R. 2:11-
> 3(e)(2).  The Criminal Part judge correctly denied
> defendant's PCR motion.

(R13, February 26, 2004 Appellate Division Opinion at pp. 4-5).

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of

17

> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel,
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  Strickland, 466 U.S. at 687.
Prejudice is shown if "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.
Id. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  Id. at 697.  See
also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, the Court finds that petitioner has failed to
establish either deficient performance by trial counsel or any
resulting prejudice sufficient to change the outcome of the

trial.  First, it is plain from the record that defense counsel had attempted to have the guardian ad litem's report and other records admitted at trial, but such evidence was precluded by the trial court.  That decision was affirmed on appeal, the Appellate Division finding nothing to suggest that the trial court's evidentiary rulings were improper or erroneous.

Second, counsel was not deficient in cross-examining witnesses; rather, he was precluded from using the alleged documents to cross-examine the victim, his mother, and the guardian ad litem because the records properly had been barred from admission at trial.  As to the other claims of deficient performance, the PCR court found that defense counsel had performed an adequate investigation, that none of the substantive witnesses contradicted the investigator's report, that defense counsel had presented a third party guilt defense throughout trial, and that counsel called several witnesses to testify at trial on Durmer's behalf to provide an alibi concerning the time the offenses allegedly occurred.  There was no support or corroboration from the record that trial counsel represented Durmer in such a deficient manner that he was denied a fair trial.

Further, the PCR court found that even if counsel was deficient, the outcome at trial would not have been different.  The court found the evidence presented at trial against Durmer to

be overwhelming.  There also was no evidence presented, either <u>in camera</u> or at trial, which showed that Durmer did not commit the offenses.  More importantly, the victim never wavered in his allegations against Durmer.

Consequently, this habeas claim fails because Durmer cannot prove the prejudice prong under <u>Strickland</u>.  There is no showing that any alleged error by trial counsel was so serious as to deprive petitioner of a fair trial or that a different outcome would have resulted at trial otherwise.  Durmer has not shown that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Nor was the state court rulings contrary to established federal law set forth in <u>Strickland</u>.  Therefore, this claim will be denied.

B.  <u>Judicial Bias</u>

Durmer next alleges that the trial judge demonstrated a bias against petitioner at trial by acting as a "second prosecutor" in redacting portions of his college transcript, and by failing to admonish the prosecutor during his summation.

1.  *Redacted College Transcripts*

The college transcripts were offered by defense to show that Durmer was not available to commit the alleged crimes at the time the victim stated they occurred.  Durmer raised this argument in his <u>pro se</u> supplemental brief on direct appeal.  The Appellate

Division found "no impropriety" in the trial court's decision to redact the college transcripts.  (R4, April 5, 2000 Appellate Division Opinion at pg. 9).

The admissibility of evidence is generally a question of state law which is not cognizable under habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir.), cert. denied, 534 U.S. 973 (2001); U.S. ex re. Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978).  Federal courts must afford the states deference in its determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986).  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form

21

the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

Here, after reviewing the record in this case, the Court finds that the trial court's redaction of Durmer's college transcripts was not an error of a constitutional dimension. There is simply no evidence of impropriety by the trial judge in redacting portions of the transcripts.  Moreover, there was other evidence to support petitioner's alibi defense, namely, the testimony of certain witnesses to that effect.  There is nothing alleged by petitioner or from the trial record that would

22

demonstrate that the trial process was fundamentally unfair. Therefore, this Court finds no judicial bias and that the trial court's decision to redact the petitioner's college transcripts before admitting them into evidence did not violate Durmer's constitutional right to a fair trial.  This ground for a writ of habeas corpus will be denied accordingly.

    2.  *Failure to Admonish Prosecutor During Summation*

    Next, Durmer argues that the trial judge demonstrated a bias against petitioner at trial when the judge failed to admonish the prosecutor during summation.  For the reasons stated in the following section, there were no remarks by the prosecutor that constituted misconduct so as to deprive Durmer of a fair trial. Further, the remarks to which defense counsel objected were found to be "proper comment and argument."  (R4, April 5, 2000 Appellate Division Opinion at pg. 9).

    Therefore, this Court finds no judicial bias during the summation by the prosecutor.  Durmer has not shown that the state court rulings with respect to the prosecutor's remarks during summation, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Accordingly, this ground for a writ of habeas corpus will be denied.

23

C.  <u>Prosecutorial Misconduct</u>

In his third ground for habeas relief, Durmer asserts a claim of prosecutorial misconduct during summation at petitioner's criminal trial.  In particular, Durmer alleges that the prosecutor improperly vouched for the veracity of the child victim, made comments unsupported by the evidence, and withheld information from the jury in his summation about the role of the victim's father contained in certain documents from Maine.  (Petition, Ground 12C).[8]  These claims of prosecutorial misconduct were raised on direct appeal.

The Appellate Division rejected this ground for appeal, finding:

> We turn now to the prosecutor's summation.  Defendant complains that the prosecutor improperly vouched for C.B.'s credibility, made comments that were not supported by the evidence and improperly alluded to a defendant's right not to testify.  Although defendant made certain objections to the prosecutor's summation at trial, he now complains of

---

[8]  Durmer further claims that the prosecutor committed official misconduct by failing to adhere to the New Jersey Rules of Professional Conduct ("N.J.R.P.C."), namely, by alluding to matters during summation not supported by the evidence, in violation of N.J.R.P.C. 3.4(e); by prosecuting petitioner without probable cause, in violation of N.J.R.P.C. 3.8(a); and by engaging in conduct involving dishonesty and misrepresentation or otherwise violative of the Rules of Professional Conduct, contrary to N.J.R.P.C. 8.4.  (Petition, Ground 12C).  These allegations are based on violations of state law or procedures, and as such, are not cognizable on federal habeas review.  However, to the extent that these claims relate to the comments made by the prosecutor during the summation at trial, the claims are without merit for the reasons set forth in this Opinion, <u>infra</u>.

remarks in addition to those he specified to the trial court.

We have repeatedly commented upon the duty of a prosecutor in summation.  The prosecutor must argue the State's case forcefully, but while the prosecutor may strike hard blows, he may not strike foul ones, for the prosecutor's primary duty is to seek justice, not to attain convictions.  State v. Goode, 278 N.J. Super. 351 (App. Div.), certif. denied, 134 N.J. 485 (1993).  Representing the State, the prosecutor carries a heavy burden and is, accordingly, afforded "considerable leeway" in presenting a closing argument. State v. Frost, 158 N.J. 76, 82 (1999).

We agree with the trial court that the remarks to which defendant objected at trial were proper comment and argument.  We are, however, troubled by several of the remarks of which defendant now complains.  The prosecutor told the jury, on several occasions during the course of his summation, that C.B. had "the right to be believed."  We agree with defendant that such a remark was improper. C.B. did not have a "right" to have the jury accept his testimony as credible.  He had a duty to testify truthfully to the jury about his experiences; the jury had a corresponding duty to assess and weigh that testimony in light of all the other evidence that was presented and in light of their own assessment of C.B.'s manner and demeanor.  The jury was entirely free to reject C.B.'s testimony if the jury determined it was not credible.

The trial court, however, clearly and adequately instructed the jury on the question of assessing witness credibility. In light of those instructions, we decline to consider those remarks plain error, but stress that they should not be repeated in future proceedings.

We also note that when the summation is closely read and analyzed, a portion of the prosecutor's comments could be interpreted to contain an allusion to defendant's failure to testify.  That defendant's attorney did not interpose an objection on that basis, when he did not hesitate to object to other portions of the summation, indicates to us that remarks did not convey that flavor when they were delivered. State v. Frost, supra, 158 N.J. at 83.  Again, we see no plain error.

Within his brief, defendant refers to the case as a "close" one and stresses that in such an instance, improper comments

by a prosecutor carry even more potential for harm.  We note
only that after reviewing the record in this matter, we are
unable to concur in that assessment of the case.  In any
event, a prosecutor should always be cognizant of the impact
of his remarks; otherwise valid convictions should not be
jeopardized by ill-chosen words spoken in the heat of trial.

(R4, April 5, 2000 Appellate Division Opinion at pp. 6-8).

Habeas review of a claim based on prosecutorial misconduct
is limited to determining whether the conduct "so infected the
trial with unfairness as to make the resulting conviction a
denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637,
643 (1974).  "The touchstone of due process analysis in cases of
alleged prosecutorial misconduct is the fairness of the trial,
not the culpability of the prosecutor." Smith v. Phillips, 455
U.S. 209, 219 (1982).  If it does not infect the entire trial,
misconduct alone is not enough to warrant a new trial.  Id. at
220.  "A criminal conviction is not to be lightly overturned on
the basis of a prosecutor's comments [or conduct] standing alone,
for the statements or conduct must be viewed in context." United
States v. Young, 470 U.S. 1, 11 (1985).

However, the U.S. Supreme Court has recognized the
obligation of a prosecutor to conduct a criminal prosecution with
propriety and fairness.

He may prosecute with earnestness and vigor – indeed,
he should do so.  But, while he may strike hard blows,
he is not at liberty to strike foul ones.  It is as
much his duty to refrain from improper methods
calculated to produce a wrongful conviction as it is to
use every legitimate means to bring about a just one.
... Consequently, improper suggestions, insinuations,

26

and, especially, assertions of personal knowledge are
apt to carry much weight against the accused when they
should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).

When a prosecutor's opening or closing remarks are
challenged in a habeas petition, again, "[t]he relevant question
is whether the prosecutor's comments 'so infected the trial with
unfairness as to make the resulting conviction a denial of due
process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986)
(quoting Donnelly, 416 U.S. at 643).  In determining the likely
effect of improper comments, a court may consider whether the
comments were responsive to or invited by prior comments made by
opposing counsel.  Darden, 477 U.S. at 181-82.  "Supreme Court
precedent counsels that the reviewing court must examine the
prosecutor's offensive actions in context and in light of the
entire trial, assessing the severity of the conduct, the effect
of the curative instructions, and the quantum of evidence against
the defendant."  Moore v. Morton, 255 F.3d 95, 107 (3d Cir.
2001).

This Court finds that the prosecutor's comments during
summation, to which defense counsel objected at trial, were
within the realm of fair comment; but the comments about the
victim's "right" to be believed, and defendant's failure to
testify, were improper and should not have been made by the
prosecutor.  That being said, however, these comments did not

27

have the capacity on their own to so infect the trial with
unfairness as to make the resulting conviction a denial of due
process.  The Appellate Division expressly found that the quantum
of evidence against Durmer did not make this case a "close" one
as suggested by petitioner.  Further, there was no prejudicial
impact to petitioner from the comment about the victim's "right"
to be believed.  The trial judge properly instructed the jury on
their duty to assess and weigh the credibility of the testimony
presented at trial, and that the jury was free to reject any
testimony they determined not to be credible.

Therefore, the Court finds no error of constitutional
dimension with respect to these claims of prosecutorial
misconduct during summation.  The Appellate Division's ruling was
not contrary to, and did not involve an unreasonable application
of, clearly established federal law; nor was it based on an
unreasonable determination of the facts presented in the state
court proceedings.  Accordingly, this claim will be denied.

D.  Official Misconduct

Durmer next alleges that Investigator Mills committed
official misconduct because he never attempted to verify the
victim's story, and if he did, he failed to provide the results
of the investigation to petitioner.  This claim was raised during
the PCR proceedings as part of petitioner's ineffective

28

assistance of counsel claim.  The PCR court found no basis for the claim:

> Counsel failed to contest the accuracy of the State's investigation.  Now, this is the issue, precisely, that now Mr. Durmer broadens that argument and says, not only was Mr. Young ineffective, the State had some duty to investigate Investigator Mills.  Now we have created, in the defendant's argument, a third prong, so to speak.  Like now we have to investigate the investigator.
>
> Well, the investigator is not the person solely -- not the sole piece of evidence that took the stand and convicted Mr. Durmer and convinced the jury beyond a reasonable doubt he was guilty.  There were a few other witnesses in this case.  Investigator Mills was merely the investigator that put these things together.
>
> For him to say that there wasn't a thorough investigation of Mills to determine whether or not he misrepresented facts or he was lying, when in fact the witnesses, the substantive witnesses testified no differently for the State than had been reported to Investigator Mills.  So there is no basis to even suspect that an investigation should have been made of Mills.  And it is almost a frivolous argument.

(R18, PCR Transcript at 18:13-19:10).  The PCR court ruling was affirmed without discussion on appeal.

Government misconduct that is fundamentally unfair or shocking to the traditional sense of justice violates due process.  See Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 246 (1960).  Likewise, the concept of fairness embodied in the Due Process Clause is violated by official misconduct that is "so outrageous" that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction against the accused.  United States v. Russell, 411 U.S. 423, 431-32 (1973); see United States v. Schmidt, 105 F.3d

82, 91 (2d Cir.), cert. denied, 522 U.S. 846 (1997).  However, "[p]olice over involvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction." Hampton v. United States, 425 U.S. 484, 495 n.7 (1976)(J. Powell, concurring).

Generally, the outrageousness of official misconduct must be viewed "standing alone" and without regard to the defendant's criminal disposition. United States v. Chin, 934 F.2d 393, 398 (2d Cir. 1991).  Official misconduct typically involves coercion or violation of the defendant's person. Charris v. Artuz, 32 F. Sup.2d 139, 143 (S.D.N.Y. 1998)(citing Watts v. Indiana, 338 U.S. 49, 55 (1949) and Rochin v. California, 342 U.S. 165, 172 (1952).

In this case, the Court is hard pressed to find any official misconduct based on the allegations made by petitioner, let alone, actionable misconduct that shocks the conscience and violates the federal principles of due process.  Here, there is no evidence of coercion or outrageous conduct by Investigator Mills against Durmer or the witnesses interviewed.  Moreover, Investigator Mills was not the only witness at trial.  There were other substantive witnesses testifying at trial who did not contradict what they had reported to Investigator Mills. Finally, there is no evidence to show that Investigator Mills failed to provide exculpatory information to petitioner or his counsel.

30

Based on these facts, this Court finds no merit to Durmer's claim of official misconduct.  Durmer also has not shown that the determination by the PCR court and the state appellate court on this issue, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. Matteo, 171 F.3d at 891.  Accordingly, this ground for a writ of habeas corpus will be denied.

E.   Actual Innocence

Finally, Durmer asserts a general claim that he is actually innocent of the crimes for which he was convicted, and that he was prevented from presenting evidence of third party guilt at trial.  It is obvious from the state court record reviewed that there is no merit to this claim.  Durmer was not prevented from asserting a third party guilt defense, and the record shows that defense counsel vigorously argued third party guilt at trial. However, there was simply no evidence presented in state court, in camera or otherwise, that disputed Durmer's guilt.  Indeed, the state courts found the evidence against Durmer to be overwhelming.  Therefore, this claim for habeas relief will be denied.

V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability

31

only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

<u>**CONCLUSION**</u>

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue. An appropriate Order follows.


/s/Joel A Pisano
JOEL A. PISANO
United States District Judge

Dated: October 13, 2006